**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY SLOAN,** | : | |
| | | **CASE NO.  C - 1 - 01 - 592** |
| **Plaintiff,** | : | |
| | | **Judge Weber** |
| **vs.** | : | **Magistrate Hogan** |
| | | |
| **CITY OF CINCINNATI, et al.,** | : | **Defendants' Request For** |
| | | **Leave to File Attached** |
| **Defendants.** | : | <u>**Dispositive Motion**</u> |

By and through counsel, the Defendants City of Cincinnati, Hale, Shatzer, and Triggs hereby respectfully request the Court to grant them leave to file the attached Motion for Summary Judgment.  The Motion and Memorandum are completely prepared and ready for filing at this moment.  Counsel is aware that the extended deadline for the filing of this motion is past.  The attached Memorandum had been substantially completed prior to the deadline and served upon Plaintiff, but counsel became aware at the last minute that the transcripts received from state court were still incomplete.  Due to a combination of continuing problems obtaining the full state court transcripts, counsel's heavy litigation calender, and inadvertence, the prepared memorandum was not filed on the date set by the Court.

Counsel strongly believes that allowance to file the motion will contribute greatly to the just and efficient resolution of this case.   It is always better, whenever possible, to attempt to resolve a case, either fully or in part, by motion.  There are many witnesses in this case and a jury trial is likely to last several days.  One of the issues raised in the motion sought to be filed is qualified immunity for three individuals, which is better determined prior to an actual trial.

Disposition of the motion will either narrow and focus the issues that must be tried,

dispose of the case altogether without trial, or facilitate a pre-trial settlement.

Counsel has discussed this request with Plaintiff's counsel, who has indicated he is opposed, and with Special Counsel for the individual defendants, who supports the motion.

Counsel apologizes to the Court for the lateness of this request and is essentially begging the indulgence of the Court because he believes that it will be to the better in terms of the workload of the Court and counsel for the parties that the proffered Motion for Summary Judgment be heard.

Respectfully submitted,

J. RITA McNEIL
CITY SOLICITOR
City of Cincinnati

/S/ Michael J. Harmon

OK per telephone    MJH

_____          _____

Steven S. Lazarus (0041368)          Michael J. Harmon (0018344)
Hardin, Lefton, Lazarus & Marks          TRIAL COUNSEL FOR DEFENDANTS
SPECIAL COUNSEL          214 City Hall
FOR INDIVIDUAL DEFENDANTS          8th & Plum Streets
915 Cincinnati Club Bldg.          Cincinnati, Ohio 45202
30 Garfield Place          (513) 352-3333/3334  Fax 352-1515
Cincinnati, Ohio 45202          mike.harmon@Cincinnati-Oh.gov
stevelazarus@hllmlaw.com          (513) 721-7300   Fax 721-7008

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion has been discussed by telephone and served on Plaintiff's

counsel, Timothy A. Smith, Esq., 199 East Court St., Suite 409, Cincinnati, OH 45202, by

e-mail to timsmit@mac.com and by FAX to 421-1890, this 3rd day of March, 2004.

/S/ Michael J. Harmon
Michael J. Harmon

2

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY SLOAN, | : | |
| Plaintiff, | : | CASE NO.  C - 1 - 01 - 592 |
| vs. | : | Judge Weber |
| | | Magistrate Hogan |
| CITY OF CINCINNATI, et al., | : | |
| Defendants. | : | |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

By and through counsel, the Defendants City of Cincinnati, Hale, Shatzer, and Triggs

hereby respectfully request the Court to grant them summary judgment pursuant to Civil Rule 56

for the reason that there are no material issues of fact and they are entitled to judgment as a

matter of law.  The basis for this motion is set out in the accompanying memorandum.

Respectfully submitted,

J. RITA McNEIL
CITY SOLICITOR
City of Cincinnati

<u>/S/ Michael J. Harmon</u>
Michael J. Harmon (0018344)
Assistant City Solicitor
TRIAL COUNSEL FOR DEFENDANTS
214 City Hall
8th & Plum Streets
Cincinnati, Ohio 45202
(513) 352-3333/3334  Fax 352-1515
mike.harmon@Cincinnati-Oh.gov

<u>MEMORANDUM</u>

This is a Section 1983 case.  Complaint, Doc. 1, Paragraph 1.  It arises out of an incident which occurred on September 4, 1999.  The Complaint was filed on September 4, 2001. Defendants Ronald Hale, Laurie Shatzer, and Alvin Triggs are and were at all relevant times Police Officers employed by Defendant City of Cincinnati.  Defendants John Doe (1 through 9) are alleged to have been Cincinnati police officers.  All of the defendant police officers are specified in both their official and their individual capacities.  Waivers of service of summons were delivered to the City and executed on behalf of the City and the named defendant police officers, Hale, Shatzer, and Triggs, in their official capacities on December 28, 2001.  Doc. 5. Service on named defendant officers Hale, Shatzer, and Triggs in their individual capacities was apparently effected on July 2, 2002.  Docs. 14, 15, and 16.  Defendants John Doe (1 through 9) have never been served; the Complaint has never been amended to identify them and substitute their names.

<u>Plaintiff's  Claims and Allegations</u>

**Count I** of the Complaint alleges, against Defendants Hale and Shatzer, a 4th and 14th Amendment claim of arrest without probable cause. Complaint, Doc.1, Para. 7.

**Count II** alleges, against Defendants John Does (1 through 9), who have never been named and served, a 4th, 5th, and 14th Amendment claim of threatening and intimidating witnesses.  Count II also alleges that this occurred pursuant to a policy or custom of Defendant City of Cincinnati.  Doc. 1, Para. 24, 28, and 42.

**Count III** alleges generally, against Defendants Triggs, Hale, Shatzer, and John Does (1 through 9), a 4th and 14th Amendment claim of excessive force.  Doc. 1, Para. 20 &  45.

1

However, the Complaint's sole specific factual averment of excessive force designates Officer Triggs alone.  Doc. 1, Para. 23.

**Count IV** alleges, against Defendants Hale and Shatzer, a claim of malicious prosecution.  Doc. 1, Para. 25, 26, 29, 31, and 50.   No particular constitutional amendment is referenced in the complaint with regards to this claim, but, as this is solely a 1983 case, it is presumed that, as in Count I,  Plaintiff intends the 4th Amendment.*

The Complaint (Doc. 1) contains the following factual averments by the Plaintiff.  He was pulled over by bicycle officers Hale and Shatzer for operating a motor vehicle with an expired temporary license tag.  Doc.1, Para. 9-11.  He stepped out of his vehicle and was ordered by Officer Hale to re-take his seat.  Doc. 1,  Para. 12-13.  He did not initially comply with Officer Hale's order.  (He alleges he did not get back into his car because he had to reinsert dislodged molding in his car door.)  He was ordered a second time by Officer Hale to get back in his car. Doc.1, Para.14.  He interrupted Officer Shatzer while she was attempting to obtain identification from his brother Ralphael Sloan, who was seated in the front passenger seat.  He then was told by Officer Hale that he was under arrest.  Doc.1, Para.15-16.   Plaintiff was complying with an order
from Officer Hale to put his hands on the roof of his car when his brother Ralphael exited the car from the passenger side, brushed past Officer Shatzer, and ran around the car towards Officer Hale to Plaintiff's "defense."  Doc.1, Para.17.   The officers drew their guns and ordered both Plaintiff and his brother to lie down on the ground.  Doc.1, Para.18.  Plaintiff did not

---

* There is no indication in the Complaint that this is intended to be a state claim.  Para. 1 of the Complaint specifies that this action is only brought under 42 U.S.C. 1983.  Consistent with this, there is no request in the Complaint that the Court assume pendant jurisdiction over any state claims.  The "only peg" on which a federal constitutional claim of malicious prosecution may be asserted is the 4th Amendment.  Darrah v. City of Oak Park, 255 F.3d 301, 311 (6th Cir.2001).

2

immediately comply with this order. (He alleges he took a position between the officers and his brother in order to "hold him back" and plead with the officers not to shoot.) Doc.1, Para.19. After hearing a bystander urging them to comply, Plaintiff and his brother did get down on the ground. Doc. 1, Para.20.

These factual averments in the Complaint constitute admissions by the Plaintiff that (1) he was stopped by the officers for operating a vehicle with an improper tag, (2) he failed, for whatever reason, to comply with orders to remain seated in the car, (3) he interrupted the officers in the performance of their duties, (4) his brother disregarded an order to remain in the car, had physical contact with one officer, rushed around the car towards the other officer, and attempted to prevent the other officer from arresting him, and (5) both he and his brother failed to comply with orders from the officers to get down on the ground.

### Prior Legal Proceedings in State Courts of Competent Jurisdiction

An indictment* of the Plaintiff and two criminal trials in state court arose out of the September 4, 1999, incident between Plaintiff and Defendants. The transcripts of the criminal trials, filed separately with the court, are hereby incorporated as a part of this memorandum.

*State of Ohio vs. Anthony Sloan*

Anthony Sloan was indicted by a Hamilton County, Ohio, grand jury, under Common Pleas Case No. B 99 06714,** for the charge of assaulting Defendant Officer Hale on September 4, 1999. After the State of Ohio rested its case in the trial of that indictment, Plaintiff Sloan

---

*Defendants respectfully ask the Court to take judicial notice of the indictment, which is a public record. It may be viewed and printed off through the Hamilton County, Ohio, Clerk of Courts website: www.courtclerk.org. [Go to "Search Court Records by Case Number," insert "B9906714," and click the first document indicated, which will be identified by the date "9/13/99."]

** References to transcript page and line for Common Pleas Case No. B 99 06714 are designated "**CPT __.__.**"

References to the Rule 29 hearing and ruling in that same case are "**CPT-M____.____.**"

3

made a motion for a judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal

Procedure.  March 28, 2000, Motion, Case B 99 06714, CPT-M 4.24.

The court denied Plaintiff's Rule 29 motion.  CPT-M 46.18ff.  This meant the court

found that sufficient evidence had been presented to sustain a conviction. Ohio Rule of Criminal

Procedure 29(A) sets out that,  "The court on motion of a defendant or on its own motion, after

the evidence on either side is closed, shall order the entry of a judgment of acquittal of [the]

offense[ ] charged in the indictment . . . if the evidence is insufficient to sustain a conviction of

such offense . . . ."

*State of Ohio vs. Ralphael Sloan\**

Ralphael Sloan is Plaintiff Anthony Sloan's brother.  Ralphael was involved with

Plaintiff in the September 4, 1999, incident and was also arrested by Cincinnati Police.  He was

charged with interfering with the lawful arrest of the Plaintiff.  Ralphael was tried and convicted

on this charge in Hamilton County Municipal Court under Case No. 99CRB42173.**  At his trial

he conceded for the sake of argument that he had tried to interfere with Plaintiff's arrest, but he

argued that he had a right to resist an unlawful arrest and that Plaintiff's arrest, being without

probable cause, was unlawful.  Thus, whether there was probable cause for Plaintiff's arrest was

a material issue litigated at Ralphael Sloan's trial.  At the conclusion of the state's case, a Rule

29 motion for judgment of acquittal was denied.  Transcript of Municipal Court Case No. 99

CRB 42173,  MCT 121.7ff.

*In the transcript of this trial, Anthony Sloan's brother is referred to as "Ralphel."  However, in this memorandum, the brother will be referred to as "Ralphael" because that is the spelling used both in the Plaintiff's Complaint (Doc.1) and in the transcript of the Plaintiff's criminal trial in Common Pleas court.
** References to Municipal Court Case No. 99 CRB 42173 are "**MCT __.__."**

4

Subsequently, after defendant had rested, the trial judge found that

> The first question that has to be answered is whether or not Officer Hale had
> probable cause to arrest this defendant's brother [Anthony Sloan]. Was that arrest
> lawful? . . and so the question is whether he [Officer Hale] had probable cause to
> arrest . . . and the answer is, yes, he did.  Further, he had probable cause to arrest
> him [Anthony Sloan] for the assault . . . .
>                                              MCT 129-130


## **Statement of the Facts**

On the afternoon of September 4, 1999, Cincinnati Police Officers Ron Hale and Laurie
Shatzer were on bicycle patrol in District Two.  CPT 12.8.  Officer Hale was 5'7", 142; Officer
Shatzer weighed less and was slightly shorter.  CPT 11.9ff, 12.12;  MCT 37.15ff.  The officers
were riding their bicycles through the public recreation area behind Withrow High School.
Doc.1, Para.10; CPT 16; MCT 70.12ff.  A football game had ended, another was starting, and
automobiles were using a public roadway to file in and out of the recreation parking area off and
on to Dana Avenue.  Doc. 1, Para.8-9; MCT 6.10; CPT-A 47.4ff.   Officer Hale smelled the
strong odor of burning marijuana as an automobile operated by the Plaintiff, Anthony Sloan,
drove past him.*  CPT 17.7ff, 86.25ff, 95.2ff;  MCT 5.7ff, 28.19ff, 71.1ff., 83.22ff.  This drew
the attention of Officer Hale, and almost immediately after, of Officer Shatzer, to the car, which
they observed had (1) two obviously small children in the rear who were not in child safety seats,
(2) an expired temporary license plate that had been altered by white-out, (3) and a cracked
windshield.  CPT 17.12ff, 20.12ff, 94.20, 229.10ff;  MCT 5.19ff, 70.20ff.  Officer Hale
asked the car to stop.  Doc.1, Para.10;  CPT 19.16.  Officer Hale informed Mr. Sloan why he was

---

* Later, Officer Shatzer smelled marijuana on two of the occupants of the car.  MCT 31.1ff, 66.9ff.  Also, in a

subsequent search of the car incident to arrest and towing and impoundment, an open container of alcoholic beverage, evidence of a violation of O.R. C. 4301.62 was recovered in the car.  CPT 75.13ff.

5

being stopped. Doc.1, Para.11;  CPT 376.9, 390.5, 395.1, 424.18ff, 564.4.

At this point, Officer Hale had probable cause to believe that Plaintiff had altered the plates to the car, a violation of Ohio Revised Code Section, 4549.08, a 4th degree misdemeanor, for which Officer Hale had the authority to make a physical arrest.  CPT-M 36.17ff.;  O.R.C. 4549.08; O.R.C 4549.99; O.R.C. 2945.03.

Officer Hale asked to see Plaintiff's driving license. Doc.1, Para.10-11; CPT 20.12ff, 22.2ff,  97.11ff,  94.21ff, 566.25; MCT 6.3, 29.14, 72.4ff, 84.20ff.  Plaintiff told the officers he did not have a driving license.  CPT 22.5,  90.18, 504.11, 505.11, 567.7ff;  MCT 7.2ff,  35.5, 46.8,  60.6.   [At this point, Officer Hale had probable cause to believe that the Plaintiff has violated O.R.C. 4507.02, operating without a license or with a suspended license, an arrestable offense. O.R.C. 4507.02; O.R.C. 4702.99; O.R.C. 2935.03.]

The officers told Plaintiff to move the car out of the line of traffic so they could conduct business safely and without causing congestion.  Doc.1, Para.11; CPT 27.25ff; MCT 6.10, 31.24, 72.7ff,  85.6.  As the officers were dismounting and securing their bicycles, Plaintiff unexpectedly exited the car and approached them.  Doc.1, Para.13; CPT 28.4ff,  376.15, 390.10, 395.20, 425.4, 565.9; MCT 33.4, 85.11ff, 72.23.  This behavior on the part of Plaintiff raised Officer Hale's apprehension level.  CPT 27.20.

The officers told Plaintiff to get back in the car and remain until further orders. Doc.1, Para.13; CPT 28.9ff; MCT 33.16, 86.3.  Plaintiff did not comply.  Doc.1, Para. 14; CPT 28.18ff, 565.23; MCT 33.16, 38.2, 60.7, 73.5, 86.6.  Instead, he remained in the vee created by the body of the car and the open driver's door, which further heightened concern for the officers, who

6

could not view his hands or the lower part of his body.  Doc.1, Para.14; CPT 30-34;  MCT 33.20ff, 73.1ff, 85.14.   Officer Hale continued to make the request.  Doc.1, Para. 14; CPT 34.5; MCT 73.8ff,  89.3ff.  Officer Hale approached the front driver's side, where Plaintiff was seated; his partner, Officer Shatzer, approached the front passenger side, where an adult male, Plaintiff's brother, Ralphael Sloan, was seated.  Doc.1, Para.15; CPT 564.23ff;  MCT 6.2, 71.14.  Words were escalating.  CPT 35.2; MCT 34.5, 73.23, 89.13.  Officer Hale's apprehensions about safety were increasing.  CPT 27.15ff,  33.1, 130-135.

Plaintiff could not produce a drivers license; in truth, his license was under suspension. CPT 654.8.  This is a violation of O.R.C. 4507.02(B)(1), a first degree misdemeanor for which a person is subject to arrest.  The automobile such a person is operating is subject, under O.R.C. 4507.99(B), to immobilization and impoundment.  [Given his history with the Ohio Bureau of Motor Vehicles, Plaintiff most likely knew he was facing jail and impound of the vehicle.] He simply told Officer Hale he did not have a license.  CPT 22.3ff,  504.11, 505.11, 567.14; MCT 7.4ff.  Plaintiff later testified that he had a temporary license, which he had left at home. CPT 567.7ff,  593.9.  [A Bureau of Motor Vehicles check did show a suspended license and Officer Shatzer wrote Plaintiff a ticket for driving under suspension. Ex. A.]

In any event, this set up a situation prompting the need to check the license of the front seat passenger, Ralphael Sloan, because (1) a licensed driver would be necessary for the car, which had children in it, to continue on its way,  and (2) the law in the state of Ohio permits a person holding a temporary driving license to operate a motor vehicle as long as he has his temporary certificate and identification "in his immediate possession" and as long as an adult

licensed driver is actually seated in the front seat with him.  CPT 343.11ff, 677.16ff; Ohio

7

Revised Code 4507.05(A)(2)(a) and (b).  Ralphael Sloan was told to show his license to Officer

Shatzer, who was standing at the passenger window.  Doc.1, Para.15; CPT 35, 140.13, 426.1,

567.18; MCT 74.9, 74.21, 75.2ff, 99.8.  However, Plaintiff interrupted and instructed Ralphael

not to comply with the request.  CPT 35.14, CPT 506.12.  [At this point, the officers had

reasonable cause to charge and/or arrest Plaintiff for several offenses in addition to no driver's

license and altered plates, including: O.R.C. Sec. 2921.31, obstruction of official business, a 2nd

degree misdemeanor;  2931.32, obstructing justice, a minor misdemeanor; 2921.33.1, failure to

comply with an order of a police officer, a 1st degree misdemeanor; and 4513.36, interference

with an officer charged with enforcing traffic laws, a minor misdemeanor.]

Plaintiff was told that he was under arrest.  Doc.1, Para.17; CPT 35.18, 137.2, 140.9;

MCT 82.24, 90.8, 100.12.  Though not tall, he is a large man; 5'9", 250 pounds, putting him two

inches taller and 100 pounds heavier than Officer Hale.  MCT 37.15.  Due to the large size of

Plaintiff's wrists, Officer Hale had difficulty applying handcuffs.  MCT 8.9.  Struggling and

flailing ensued.  CPT 36-38ff; MCT 38.25, 75.15.  The handcuffs came off Plaintiff's wrist.

MCT 90.19ff.  Officer Hale felt a strike to his forearm-wrist area, causing pain.  CPT 38.17,

160.7, 171.13, 173.2, 174.18ff.  [At this point, there was probable cause to charge the Plaintiff

with recklessly or by force resisting arrest, a 2nd degree misdemeanor, and assault, in cases

where the target is a peace officer, a 4th degree felony.  O.R.C. 2921.33;  O.R.C. 2903.13*. ]

---

* Ohio Revised Code Section 2903.13, titled "Assault," states at subsection (A)(1), "No person shall knowingly cause or attempt to cause physical harm to another."  O.R.C. 2903.13(C) (3) says, "If the victim of the offense is a peace officer . . . while in the performance of their official duties, assault is a felony of the fourth degree."  O.R.C. 2901.22(B) states that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."  O.R.C. 2901.01 defines "physical harm" as "any injury . . . regardless of gravity or duration."

8

Officer Shatzer went to assist.  MCT 10.15, 37.3ff, 41.10.  Ralphael started out of the passenger side of the car.  CPT 40.18, 507.18, MCT 7.23, 37.3, 41.19. Officer Shatzer ordered him to stay.  Despite her orders, he exited.  CPT 41.9ff, 399.16. She tried to detain him, but he broke free.  Doc.1, Para.17; CPT 399.9, 509.3, 568.19ff; MCT 8.1, 10.19, 12.14, 14.17, 41.28ff, 43.12ff, 44.18ff, 76.4ff.  [There was now probable cause to charge and arrest Ralphael with failure to heed a lawful order (O.R.C. 2921.331) and hindering an officer (O.R.C. 4513.36). ]

Plaintiff started moving down the car from the driver area to the trunk while Officer Hale was trying to handcuff him.  CPT 569.  At the same time, Officer Hale was aware that Officer Shatzer was likewise struggling with Ralphael.  MCT 8.21, 11.20, 92.5ff.  Officer Hale lost sight of Officer Shatzer.  CPT 42.11; MCT 76.11ff, 92.11ff.  Ralphael ran around the car from Officer Shatzer.  CPT 427.15, 454.5ff.  Ralphael raced to where Plaintiff was struggling to prevent arrest and took a fighting stance toward Officer Hale.  Doc.1, Para.17; CPT 44.11, 400.14; MCT 13.5, 14.21, 76.14ff, 77.1ff, 93.5ff.   [There was now also probable cause to charge Ralphael with resisting the arrest of the Plaintiff and obstruction.]

At some point in the melee, Officer Hale was knocked or forced to the ground on one knee, and lost control of the handcuffs.  He felt soreness in his knee which did not last, but temporarily discomfited him and affected his ability to ride his bicycle. CPT 43.3ff., 160.7, 171.13ff., 174.18ff.; MCT 76.21, 95.12.  [This is further evidence of resisting and assault.]

Confronted by two combative adults, the officers became concerned enough to point firearms.  Doc.1, Para.18; CPT 48.7, 458.13; MCT 9.12ff,  25.9, 81.20, 101.13.  They repeated orders to lie down on the ground. Doc.1, Para.19;  CPT 48.11; MCT 15.5,  81.1ff, 101.24ff.

9

The two Sloans did not comply.  CPT 459.1ff.   Officer Shatzer gained compliance by resorting

to mace rather than hands-on force or using her firearm or PR-22.  CPT 511.10ff; MCT 9.17,

14.23ff, 25.15, 54.18, 62.1, 82.6, 104.19ff.  A third adult looking male  (5'9-10", 182, muscular)

came yelling out of the automobile.  CPT 58.3, 459.13, 466.15ff.  A crowd gathered.  MCT

63.18.

Other officers responded, because Officer Hale had signaled for help on his radio.  Doc.1,

Para.21; MCT 17.12.  The crowd was ordered to disperse.  Two officers, including Defendant

Alvin Triggs, were told by a Sergeant, William Nastold, to place Plaintiff in the back seat of a

cruiser.  Doc.1, Para.22; CPT 69.22.  Plaintiff refused to comply.  The officers could not force

him without the risk of physical harm to him and/or them.  Sgt. Nastold told the officers to use

mace if necessary to gain compliance.  CPT 271, 283ff.  Officer Triggs told Plaintiff three times

that mace would be used if he did not get in the cruiser.  CPT 363.6, 370.14.  He did not. Officer

Triggs did apply mace.  Plaintiff complied.

Plaintiff was charged with felony assault (on a police officer), misdemeanors of resisting

arrest and menacing, and driving under suspension and with an expired/altered tag.  The non-

traffic charges were presented together to the Grand Jury, which returned the indictment of

felony assault under Common Pleas Case No. B 99 6714.   Plaintiff did not file a motion to

suppress his arrest. CPT 177.10; CPT-M 20.2, 23.7.  Although he was ultimately acquitted at

trial, his Rule 29 motion for judgment of acquittal made at the conclusion of the State's case was

denied.*  CPT-M 46.18ff.

* Plaintiff also argued at his Common Pleas trial that the officers did not have authority to stop him for any traffic
violations because they did not observe him operating the motor vehicle on a public street.  He claims that he was on
a private drive. However, notwithstanding the fact that the officers had reasonable suspicion to make an initial Terry

stop because of the strong smell of marijuana, this argument was rejected by the Common Pleas court which found the "driveway" to be a public street.  CPT-M 47.4ff.  The "driveway" is used by the public to proceed from Dana Avenue to and from the public recreation facilities and field behind Withrow.  Ohio Revised Code 4511.01(BB) defines a "street" or "highway" subject to traffic law regulation as "every way open to the use of the public as a thoroughfare for purposes of vehicular travel."

10

Ralphael Sloan was convicted in Hamilton County Municipal Court, Case No. 99 CRB

42173, of resisting the lawful arrest of the Plaintiff.   In reaching its judgment of conviction, the

Municipal Court was required to first determine whether the Plaintiff's arrest which Ralphael

resisted was supported by probable cause.   It did so find.  MCT Vol.II, pp. 23-24.

## ARGUMENT

### Counts I & IV: False Arrest and Malicious Prosecution

Counts I and VI of the Complaint allege respectively federal claims of improper arrest

and  malicious prosecution against Defendants Hale and Shatzer.  These two causes of action,

both rooted in the 4th Amendment, share a common element:  lack of reasonable basis or

probable cause.  To establish these claims Plaintiff must prove lack of probable cause (objective

test), irregardless of the existence of any malice (subjective test).  Atwater v. City of Lago Vista,

532 U.S. 318, 121 S.Ct. 1536 (2001); Whren v. United States, 517 U.S. 806, 116 S.Ct. 1768

(1996);  Darrah v. City of Oak Park, 255 F.3d 301 (6th Cir. 2001).

### *The Initial Stop*

The initial stop of the automobile operated by the Plaintiff passes constitutional muster.

United States v. Copeland, 304 F.3d 533, 543-44 (6th Cir.2002); Whren v. United States, 517

U.S. 806, 99 S.Ct. 1768 (1996).  The strong smell of burning marijuana justified a Terry stop.

An altered/expired plate, a cracked windshield, children without safety restraints, each even

alone justify a traffic stop.  United States v. Heath, 259 F.3d 522, 528 (6th Cir.2001); United

States v. Hurst, 228 F.3d 751, 756 (6th Cir.2000).

*Probable Cause*

Probable cause is reasonable grounds for belief, supported by less than prima facie proof

11

but more than mere suspicion.  The probable cause standard is flexible and commonsense.  The

court must examine the totality of circumstances from the perspective of the officer at the time of

the incident.  An officer has probable cause if he observes a moving violation, observes a vehicle

without proper plates, or observes merely a parking violation. United States v. Copeland, 304

F.3d 533, 543 (6th Cir.2002).

*Authority to Arrest*

If an officer has probable cause to believe an individual has committed even a minor

misdemeanor in his presence, he may, without violating the 4th Amendment, arrest the offender.

Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536 (2001).

State law authorizes an officer to make an arrest if there is probable cause of a violation.

Ohio Revised Code 2935.03(A)(1) requires a municipal officer to arrest and detain a person

observed violating a municipal ordinance. Numerous city ordinances were implicated when the

officers observed the Plaintiff and the auto he was operating.  Cincinnati Municipal Code makes

it an offense to white out or conceal a part of a license plate (CMC 503-51), operate an

automobile with an expired license plate (CMC 503-52), operate an automobile with a cracked

windshield (CMC 503-55), or "refuse to comply with any lawful order or direction of any police

officer invested by law with authority to direct, control, or regulate traffic" (CMC 502-9).

*An Acquittal Does Not Negate Probable Cause*

The fact that Plaintiff may have been ultimately acquitted does not negate the existence

of probable cause for his arrest.  Probable cause does not require evidence sufficient to ensure a

conviction.  Adams v. Metiva, 31 F.3d 375, 388 (6th Cir.1994); Widmeyer v. Felton, 95 F. 926,

931 (S.D. Ohio 1899); Ohio v. Kuehne, 1996 Ohio App. LEXIS 813 (Hamilton County).

12

*Grand Jury Indictment*

An indictment by a grand jury establishes prima facie evidence of probable cause.  Hruska v.

Severance Speciality, Inc., 498 F.2d 796, 802 (6th Cir. 1974); Bickley v. FMC Technologies, Inc.

, 282 F. Supp. 2d 631 (N.D.Ohio 2003); Deoma v. City of Shaker Heights, et al., 68 Ohio App.3d

72, 77, 587 N.E. 2d 425 (8th Dist. 1990); Adamson v. The May Company, et al., 8 Ohio App.3d

266, 268, 456 N.E.2d 1212, 1215 (8th Dist. 1982); Epling v. Pacific Intermountain Express Co.,

et al., 55 Ohio App.2d 59, 63, 379 N.E.2d 239 (9th Cir. 1977).

A legal presumption of probable cause arises where there has been an indictment.

Bellino v. Superior Beverage Co,, Inc., et al. 2001 Ohio App. LEXIS 6007 (11th Dist.2001);

Uroseva v. Lerakis, 1992 Ohio App. LEXIS 3665 (11th Dist. 1992).

*Denial of a Motion for Judgment of Acquittal*

The fact that a state trial court overrules an Ohio Rule of Criminal Procedure 29 motion

for a judgment of acquittal at the end of the state's case is indicative of the existence of probable

cause because it is a finding that the state has presented a prima facie case of some evidence

going to all of the elements of the charge sufficient to support a conviction.  Ohio Rule of

Criminal Procedure 29(A).

*Issue Preclusion*

The Full Faith and Credit statute, 28 U.S.C. 1738, provides in part:

> The records and judicial proceedings of any court of any . . . State . . . or copies
> thereof, shall be proved or admitted in other courts within the United States . . . .

> Such acts, records and judicial proceedings or copies thereof, so authenticated,

shall have the same full faith and credit in every court within the United States . . .
as they have by law or usage in the courts of such State . . . from which they are
taken.

13

A federal court should give preclusive effect to a state court's judgment.  Migra v.
Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892 (1984). Issue preclusion
bars the re-litigation in federal court of an issue previously decided in an earlier state court
proceeding  which was actually litigated and necessarily determinative of the state court action.
Peterson Novelties, Inc. v. Barman, et al., 395 F.3d 386, 396 (6th Cir. 2002).

*Defendants are Entitled to Judgment in Counts I and IV*

The evidence submitted to the Court, taken in a light most favorable to the Plaintiff and
considered in the light of applicable case law, establishes that Officers Ronald Hale and Laurie
Shatzer possessed reasonable, articulable suspicion and probable cause to stop and then arrest
and charge Plaintiff for multiple offenses.  The sworn testimony adduced at the two criminal
trials establishes that the officers acted reasonably under very trying circumstances, with several
facts independently or in concert supporting conclusions of reasonable articulable suspicion and
probable cause, including: (1) the strong smell of burning marijuana from the car;  (2) the
expired plate with white out; (3) the underage children without child safety seats;  (4) the
cracked windshield; (5) the driver's failure to show a driver's license;  (6) and his inability to
explain why he did not have one; (7) Plaintiff's apparent interfering with an attempt to enforce
traffic laws, in violation of O.R.C. 4513.36.  (8)  Plaintiff's failure to comply with lawful
directions and commands, in violation of 2921.331 and CMC 502-9.  (9)  Plaintiff's apparent
hampering, in violation of O.R.C. 2921.31 and .32, Obstruction, of the officers' investigation of
a possible marijuana offense* and license and traffic violations, (10)  Plaintiff's interference, in

violation of

O.R.C. 4513.36, with their ability to determine whether Ralphael Sloan was a licensed driver,

* O. R.C. 2925.11, possession, minor misdemeanor; 2925.07 prep for sale and 2925.03, trafficking, 5th degree felonies.

14

who thus might (a) legally drive the automobile and the children home or (b) legally accompany

Plaintiff in the event it was determined that he did in fact possess a temporary driving license.

For any one or some or all of the above factors, the officers had probable cause to

arrest  Plaintiff.   In the melee which ensued after the officers attempted to lawfully arrest him, a

reasonable officer could conclude that Plaintiff:  (a) further disobeyed lawful orders, in violation

of O.R.C. 2921.331;  (b) recklessly and/or by force resisted his own lawful arrest, in violation of

O.R.C. 2921.33(A), a misdemeanor of the 2nd degree; (c) resisted the arrest of his brother, also a

violation of O.R.C. 2921.33(A);  (d)  resisted arrest of himself and his brother in a manner

causing physical harm to a police officer, a violation of 2921.33(B), a 1st degree misdemeanor;

(e)  refused lawful orders to submit to handcuffing, further violating of 2921.331;  and (f)

engaged in physical behavior which could be construed as an assault on a police officer, a

violation of 2903.13, a 4th degree felony.

Competent jurisdictions found that the officers had probable cause.  Hamilton County

Municipal Court, in the course of convicting Ralphael Sloan of resisting the arrest of Plaintiff,

made the necessary finding that the attempt to arrest the Plaintiff was lawful.  The Grand Jury

indicted Plaintiff for assaulting Officer Hale. Hamilton County Common Pleas Court overruled

Plaintiff's Motion for Acquittal, necessarily finding that the State met its burden of presenting a

prima facie case of a violation of law justifying Plaintiff's arrest and prosecution.

Looking at some if not all of these factors during this Monday morning post-game review

of the incident, one can only conclude the officers did not act without probable cause.

15

## Count Two: Intimidation of Witnessess

The alleged claim arose on September 4, 1999; this action was filed on September 4, 2001. None of the individual Defendant John Does under this count have been identified, substituted for, and served. The period for serving these defendants has run. FRCP 4(m). The two year statute of limitations for filing an action has run. Kuhnle Brothers, Inc. v. County of Geauga, 103 F.3d 516 (6th Cir.1997); LRL Properties v. Portage County Metro Housing Authority, 55 F.3d 1097 (6th Cir.1995); Browning v. Pendleton, 869 F.2d 989 (6th Cir.1989).

The allegation that the John Doe defendants intimidated witnesses causing them not to become available for subsequent proceedings does not state a cognizable 1983 claim, but even if the Plaintiff were to establish a constitutional violation by the John Doe defendants, there can be no finding of City liability. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018 (1978). Furthermore, where, as in this case, the court cannot find that the John Does violated a constitutional right of the Plaintiff, there can be no finding of City liability. Scott v. Clay County, 205 F.3d 867 (6th Cir.2000).

With regard to the City, this count alleges a policy or custom. Doc.1, Para. 41-42. However, there is no allegation that the alleged policy or custom was a result of deliberate indifference on the part of the City. City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (1989). The single incident alleged in the complaint is not sufficient to establish the existence of a policy or custom and to impose liability on the City. Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427 (1985).

For these reasons, Count II should be dismissed in its entirety, with judgment for the City.

16

## Count III: Use of Force

The right to arrest necessarily includes the right to use reasonable force.  Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72 (1989); Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2160 (2001).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  Kostrzewa v. City of Troy, 247 F.3d 633, 638 (6th Cir.2001); Collins v. Nagle, 892 F.2d 489, 496 (6th Cir.1989); Johnson v. Glick, 481 F.2d 1028, 1033 (1973).

### Deployment of Firearms

The unholstering and pointing of firearms is not a per se violation of the constitutional bar against use of excessive force by police officers.  Foote v. Dunagan, 33 F.3d 445, 448 (4th Cir. 1994); Pleasant v. Zamieski, 895 F.2d 272 (6th Cir.1990).  Courts have recognized that officers may point firearms "in an effort to discourage resistance and ensure their own safety."  Mellott v. Heemer, 161 F.3d 117, 122-23 (3rd Cir.1998).

### Deployment of Mace

Likewise, the employment of mace is not per se unreasonable force.  Vaughn v. Lebanon, 18 Fed. Appx. 252, 266 (6th Cir.2001); Adams v. Metiva, 31 F.3d 375, 384 (6th Cir.1994).

### Standard of Review

The standard of review for excessive force claims is whether the officer's perspective on the scene of what was happening and what he needed to do was reasonable.  Was it reasonable to

conclude Plaintiff was actively resisting his arrest?  Darrah v. City of Oak Park, 255 F.3d 301, 307 (6th Cir. 2001).  Considering the totality of the circumstances, were the officers' actions not unreasonable?  Williams v. Belknap, 154 F.Supp.2d 1069, 1072 (E.D.Mich.2001).

17

*Defendants are Entitled to Judgment as to Count Three*

If this count addresses only Officer Triggs, the evidence submitted shows that in his administration of mace he acted pursuant to the command of a superior officer who is not a party to this litigation, and that he also acted with restraint, as a last resort, after repeated warnings, applying the mace, not with a purpose to torture and punish, but only to a degree necessary to obtain compliance in a manner that would obviate the use of a higher degree of physical force with a potential for lasting injury.

If this count also addresses the actions of Officers Hale and Shatzer, a review of the facts submitted shows that they, too, acted in a reasonable manner under the circumstances as they perceived them.  Any reasonable officer or citizen would likely have interpreted the actions and inactions, responses, and non-responses of the Plaintiff to signal noncompliance and resistance to lawful orders, thus requiring the application of force adequate to ensure compliance without causing disproportionate, serious, lasting injury.

## 11th Amendment Immunity in Official Capacities

Inasmuch as Officers Hale and Shatzer were involved in enforcing State of Ohio laws, they are immune in their official capacities.  Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir.1993).  The Complaint alleges that they falsely charged Plaintiff with offenses of assault on a police officer (O.R.C. 2903.13), menacing (2903.22), and resisting arrest (2921.33).*  These are all State of Ohio charges, found in the criminal code of Ohio, Chapter 29.  State criminal laws

represent the policy of the state. When city officers act in their official capacity to enforce those

* The officers also charged Plaintiff with violating O.R.C. 4507.02(B)(1) (driving under suspension). They also had a basis to investigate possible marijuana offenses and probable cause to arrest or cite for other traffic violations, but the Plaintiff does not challenge any of this in his complaint. It would seem that not challenging the arrest/stop in these regards is an admission that the officers did have several valid bases to arrest. Under Atwater, the officers would not have violated the 4th Amendment if they arrested Plaintiff only for failure to use child restraints or for the cracked windshield.

18

laws, they act as state agents. Suits against state officers acting in their official capacities, as

with suits against one of the states, are not cognizable under section 1983. Will v. Michigan

Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989).

### Absolute Immunity as Witnesses in Court Proceedings

It does not matter whether the Plaintiff alleges that Officers Hale and Shatzer did not

testify fully or accurately before the grand jury or at the criminal trials. They are absolutely

immune in this regard. Spurlock v. Satterfield, 167 F.3d 995, 1001 (6th Cir.1999). Whether any

misinformation was given to the court by the officers, the only relevant issue is whether there

was some reasonable, objective basis to conclude there was probable cause to arrest and charge

the Plaintiff. Darrah v. City of Oak Park, 255 F.3d 301, 312 (6th Cir.2001).

### Qualified Immunity in Individual Capacities

The individual police officer defendants are entitled to immunity because they did not

violate a right of the Plaintiff protected by the 4th Amendment. Atwater, supra. Should they be

found to have violated a constitutionally protected right, they are yet entitled to qualified

immunity if, in light of the totality of circumstances, a reasonable officer in their situation would

not have realized that he was violating such a right. Saucier v. Katz, 533 U.S. 194, 201 (2001);

Long v. Norris, 929 F.2d 1111, 1114 (6th Cir.1991); Malley v. Briggs, 475 U.S. 335, 341 (1986).

For the reasons elaborated above, the officers named as defendants did not in fact violate any

constitutional right of the Plaintiff, but if, for the sake of argument, they did, they did not do so

either knowingly or in violation of any clearly established legal precedent.

19

## CONCLUSION

WHEREFORE, based upon the absence of any significant, relevant issue of material fact, all Defendants are entitled to summary judgment or dismissal in their favor as a matter of law and the complaint herein should be dismissed.

Respectfully submitted,

J. RITA McNEIL
CITY SOLICITOR


/S/ Michael J. Harmon
Michael J. Harmon (Ohio Reg. 0018344)
Assistant City Solicitor

TRIAL COUNSEL FOR DEFENDANTS
214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
(513) 352-3333/3334
Fax  (513) 352-1515
mike.harmon@Cincinnati-Oh.gov


## CERTIFICATE OF SERVICE

A copy of the foregoing Motion for Summary Judgment has been served on Plaintiff's counsel, Timothy A. Smith, Esq., 199 East Court St., Suite 409, Cincinnati, OH 45202, by by e-mail attachment to timsmit@mac.com this 4th day of March, 2003.

<u>/S/Michael J. Harmon</u>
Michael J. Harmon


20
**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY SLOAN,** | : | |
| | | **CASE NO.  C - 1 - 01 - 592** |
| **Plaintiff,** | : | |
| | | **Judge Weber** |
| **vs.** | : | **Magistrate Hogan** |
| | | |
| **CITY OF CINCINNATI, et al.,** | : | **Defendants' Proposed** |
| | | **Findings of Fact and** |
| **Defendants.** | : | <u>**Conclusions of Law**</u> |

By and through counsel, the Defendants City of Cincinnati, Hale, Shatzer, and Triggs,

per the Court's rules in conjunction with the filing of a Motion for Summary Judgment, hereby

respectfully submit the attached Proposed Findings of Fact and Conclusions of Law.

Respectfully submitted,

J. RITA McNEIL
CITY SOLICITOR
City of Cincinnati


/S/ Michael J. Harmon
_____
Michael J. Harmon (0018344)
Senior Assistant Solicitor
TRIAL COUNSEL FOR DEFENDANTS
214 City Hall
8th & Plum Streets
Cincinnati, Ohio 45202
(513) 352-3333/3334  Fax 352-1515
mike.harmon@Cincinnati-Oh.gov

1

## <u>PROPOSED FINDINGS OF FACT</u>

1. On September 4, 1999, Plaintiff Anthony Sloan was operating a motor vehicle on a public right of way in Cincinnati, Ohio.

2. On that same date, Defendants Ronald Hale, Laurie Shatzer, and Alvin Triggs were acting in the course and scope and in furtherance of their duties as police officers employed by the Defendant City of Cincinnati.

3. The City of Cincinnati is a political subdivision of the State of Ohio.

4. Ohio Revised Code (O.R.C.) 2935.03(A)(1) states that a municipal police officer shall arrest and detain a person found violating, within the limits of the municipality, a law of Ohio or an ordinance of the municipality.

5. Plaintiff did not have a driver's license on his person while he was operating the motor vehicle.

6. The Ohio Bureau of Motor Vehicles listed Plaintiff's right to drive as suspended.

7. Ohio Revised Code Section 4702.02 makes it unlawful to operate a motor vehicle in Ohio with a suspended driver's license.

8. O.R.C. 4507.99(A) authorizes the impoundment of a motor vehicle being operated by a suspended driver.

9. Ohio Revised Code Section 4507.05(A) allows a person who has a temporary permit to drive a car as long as (1) he has his temporary permit in his immediate possession and (2) he has a licensed adult driver seated in the front seat with him.

10. Seated in the front passenger seat of the car next to Plaintiff was his brother Ralphael.

11. Ralphael Sloan was not a licensed driver on that date.

12. The automobile Plaintiff was operating had a temporary license tag.

13. The expiration date on the temporary tag appeared to have been whited-out.

14. O.R.C. 4503.21, a minor misdemeanor, bars the placing of any substance on a vehicle tag that obstructs its visibility. 4549.08, a 4th degree misdemeanor, makes it unlawful to alter the plates on a car. Cincinnati Municipal Code (CMC) 503-51 prohibits the obscuring of a plate with any substance.

2

15. The temporary tag had in fact expired prior to that date.

16. O.R.C. 4503.182(A) says that temporary tags are not renewable after they expire. CMC 503-52 prohibits operation of a vehicle with an expired tag.

17. Two small children were in the automobile.

18. The small children were not in safety restraints.

19. O.R.C. 4511.81 requires that children under either four years of age or forty pounds must be placed in child safety seats while in a motor vehicle.

20. A first offense violation of 4511.81 is a minor misdemeanor; a 2nd offense is a 4th degree.

21. The automobile had a cracked windshield.

22. A cracked windshield is a violation of Cincinnati Municipal Code 503-55

23. Plaintiff was in the process of driving the automobile on a public roadway that connects the public recreation/athletic fields behind Withrow High School with Dana Avenue.

24. Officers Ron Hale and Laurie Shatzer were on uniformed bicycle patrol traveling the same roadway in the opposite direction.

25. A football came had just finished at the athletic field and another game was about to start, so the roadway was busy with cars coming and going.

26. The Plaintiff slowly drove his vehicle past the officers at a close distance.

27. The windows of the Plaintiff's vehicle were down.

28. Officer Hale smelled the odor of burning marijuana as the vehicle passed.

29. Officer Hale saw Plaintiff operating the vehicle.

30. Officer Hale saw that the vehicle had an altered temporary tag.

31. Officer Hale decided to ask the vehicle to pull over.

32. Officer Hale saw the cracked windshield.

33. Officer Hale saw very young children in the vehicle who were not in restraints.

34. Officer Shatzer also observed the driver, the tag, the windshield, and the small children.

3

35. Later, Officer Shatzer also smelled the odor of marijuana off the clothing of occupants of the car.

36. Officer Hale ordered Plaintiff to stop his vehicle.

37. Plaintiff did stop.

38. Officer Hale told Plaintiff why he had been stopped, because of the problematic tag.

39. Officer Hale asked Plaintiff for his driver's license.

40. Plaintiff did not produce a license.

41. Plaintiff told Officer Hale he did not have a license.

42. Officer Hale told Plaintiff to move his car out of the line of traffic so they could discuss this further.

43. The police officers got off their bikes and were approaching the vehicle on foot from the front.

44. Plaintiff got out of his vehicle.

45. Officer Hale ordered the Plaintiff to get back in his vehicle.

46. Plaintiff did not comply, but stood in the vee created by the open door of the vehicle.

47. The officers could not see much of Plaintiff's body including the area around his waist and pockets.

48. This situation raised the apprehension level of the officers.

49. Officer Hale again ordered Plaintiff to get back in the car.

50. Plaintiff did not comply.

51. Officer Hale used his radio to request the dispatch of other officers for assistance.

52. Plaintiff said later he could not promptly comply because the moulding around the driver's side door and window had fallen out and he had to reinsert it, but he did not say this to the officers at the time.

53. Both parties were using strong language.

4

54. Plaintiff eventually did comply and sat back in his car.

55. Officer Hale walked towards the driver's side of the car while Officer Shatzer approached the passenger side where Ralphael Sloan was seated.

56. Plaintiff told Officer Hale that he had a temporary permit which he had left at home.

57. Officer Shatzer asked Ralphael for his ID.

58. Plaintiff interrupted and told Ralphael not to answer.

59. The officers were not given an opportunity to find out the status of Ralphael Sloan's driving privileges at that time because the Plaintiff interrupted them and told Ralphael not respond to their request for his ID.

60. Officer Hale told Plaintiff he was under arrest.

61. Plaintiff initially got back out of the car.

62. Plaintiff would not submit to arrest.

63. Plaintiff was slightly taller and approximately 100 pounds heavier than either Officer Hale or Officer Shatzer.

64. Officer Hale could not get his handcuffs around Plaintiff's wrists.

65. There was a struggle between Officer Hale and the Plaintiff during which Officer Hale experienced a painful blow to his wrist-forearm area.

66. Ralphael came out of the passenger side of the car.

67. Officer Shatzer ordered Ralphael to stay in the car.

68. Ralphael did not comply.

69. Officer Shatzer tried to grab Ralphael, but he broke free and brushed past her.

70. Ralphael ran around the car to where Plaintiff was struggling with Officer Hale.

71. Ralphael took an aggressive stance blocking Officer Hale from handcuffing Plaintiff.

72. At some point, Officer Hale was forced or knocked down, painfully striking his knee on the ground, and losing control of the handcuffs.

5

73. Both officers were reasonably in fear for their personal safety.

74. The officers briefly drew their firearms and ordered both Plaintiff and his brother to get on the ground.

75. Plaintiff and his brother did not comply.

76. A by-stander was yelling at the Plaintiff and his brother to comply.

77. Officer Shatzer employed mace to gain compliance.

78. Plaintiff and his brother did finally comply and got down on the ground.

79. A third adult male, taller than the officers and muscular, came yelling out of the back seat of the car.

80. A noisy crowd was gathering.

81. Other officers responded to the scene and dispersed the crowd.

82. Sgt. William Nastold told Officer Alvin Triggs and another officer to place Plaintiff in the back of a cruiser.

83. Plaintiff refused to get in the cruiser.

84. Sgt. Nastold told the officers to use mace if necessary to get Plaintiff to enter the cruiser.

85. Officer Triggs informed Plaintiff three times that mace would have to be used if he did not comply.

86. Plaintiff did not comply.

87. Officer Triggs did apply mace.

88. Only after mace was applied did Plaintiff get in the back of the cruiser.

89. Officer Triggs applied the mace in a reasonable amount.

90. Officer Triggs applied the mace for the sole purpose of getting Plaintiff to enter the back of the cruiser so he could avoid the necessity of either hands-on combat, which increases the risk of lasting physical injury to all parties, or using a weapon such as a PR-22, which would be more likely to cause injury to the Plaintiff.

6

91. Plaintiff was charged with: assault (on an officer) under O.R. 2913.03, a 4th degree felony; resisting arrest, under O.R.C. 2921.33, a 2nd degree misdemeanor; and menacing, under O.R.C. 2913.22, a 4th degree misdemeanor.

92. In charging Plaintiff with violations of O.R.C. 2913.03, 2921.33, and 2913.22, Officers Hale and Shatzer were enforcing State of Ohio statutes.

93. Ralphael Sloan was charged with resisting the Plaintiff's arrest.

94. Ralphael was convicted of resisting the Plaintiff's arrest in Hamilton County Municipal Court, following a bench trial in Case No. 99 CRB 42173.

95. Hamilton County Municipal Court is a court of competent jurisdiction in the State of Ohio.

96. In finding Ralphael guilty of resisting, the Municipal Court made a necessary, preliminary finding that the arrest of the Plaintiff by Officers Hale and Shatzer on September 4, 1999, was a lawful arrest.

97. The Plaintiff's charges of assault, resisting, and menacing were presented together to the Hamilton County Grand Jury.

98. The Grand Jury indicted Plaintiff for felony assault, in violation of O.R.C. 2903.13, under Hamilton County Common Pleas Court Case No. B 99 06714.

99. In the proceeding in Case No. B 99 06714, Plaintiff did not raise the issue of probable cause by filing a motion to suppress his arrest.

100. At the conclusion of the State's case during his trial under Case No. B 99 06714, Plaintiff made a Rule 29 motion for acquittal on the grounds that the prosecution had failed to make out a case against him.

101. The Plaintiff's Rule 29 motion was overruled by the trial court.

102. The Hamilton County Court of Common Pleas is a court of competent jurisdiction in the State of Ohio.

103. The charge of felony assault was dismissed by the court at the conclusion of the

Plaintiff's case.

7
**Proposed Conclusions of Law**

1.      Officers Hale and Shatzer had reasonable suspicion and probable cause to stop Plaintiff's vehicle.

2.      The officers initially had probable cause to charge Plaintiff with the following violations:
     a.  Driving under suspension, O.R.C. 4507.02
     b.  Expired temporary license tag, Cincinnati Municipal Code (CMC) 503-52
     c.  Whited-out temporary license tag, CMC 503-51, 52
     d.  Failure to place children in restraints
     e.  Cracked windshield, CMC 503-55

3.      The officers had reasonable suspicion to further investigate Plaintiff and his vehicle for marijuana and liquor violations.

4.      The officers subsequently had probable cause to charge Plaintiff with:

     a.  Obstruction of official business, O.R.C. 2921.31, 2nd degree misdemeanor
     b.  Obstructing justice, O.R.C. 2921.32, minor misdemeanor
     c.  Failure to comply with a policeman's order, O.R.C. 2921.33.1, 1st degree misdemeanor
     d.  Hindering an officer enforcing traffic laws, O.R.C. 4513.36, a minor misdemeanor
     e.  Refusal to comply with a lawful order of a police officer with authority to direct, control, or regulate traffic, CMC 502-9.

5.      Later, the officers had probable cause to charge the Plaintiff with;
     a.  Assault, O.R.C. 2903.13, a 4th degree felony
     b.  Resisting arrest, O.R.C. 2921.33, a 2nd degree misdemeanor
     c.  Menacing, O.R.C. 2903.22, a 4th degree misdemeanor

6.      Because the officers had probable cause, the filing of the charges did not amount to a violation of the Plaintiff's 4th and 14th Amendment right and Counts I and VI should be dismissed.

7.      A reasonable officer in the same situation as Officers Hale and Shatzer could have believed based upon the circumstances observed and experienced that probable cause

existed for the charges against the Plaintiff.

8.    Because Officers Hale and Shatzer's charging of Plaintiff was objectively reasonable, they are entitled to qualified immunity as to Counts I and IV.

9.    Officers Hale and Shatzer, by enforcing State of Ohio law, were acting as agents of the State of Ohio.

8

10.   Inasmuch as they were acting as agents of the State, Officers Hale and Shatzer are immune from liability under the 11th Amendment for any violations of 42 United States Code 1983.

11.   The John Doe Defendants who are the subject of Count II have never been served within the time set out in FRCP 4(m).

12.   The statute of limitations for Count II has run out and it should be dismissed.

13.   The use of force applied by Officer Triggs, Hale, and Shatzer was reasonable under the circumstances.

14.   Because the force applied was reasonable under the circumstances, no violation of the Plaintiff's 4th and 14th Amendment rights occurred and Count III should be dismissed.

15.   A reasonable officer in the same situation as Officers Triggs, Hale, and Shatzer could have believed that it was necessary and lawful to apply force in the same manner as they did.

16.   Because Officers Triggs, Hale, and Shatzer applied force in an objectively reasonable manner, they are entitled to qualified immunity as to Count III.

17.   Because no violation of Plaintiff's 4th and 14th Amendment rights occurred, the City of Cincinnati is entitled to dismissal.

18.   There is no policy or procedure, custom or practice, assigned to the City of Cincinnati which was a moving factor in any violation of Plaintiff's 4th and 14th amendment rights, thus entitling the City to dismissal.

19.   There is no finding of any ratification or approval by the City of Cincinnati of any violation of Plaintiff's 4th and 14th Amendment rights, thus entitling the City to dismissal.

Respectfully submitted,

/S/ Michael J. Harmon
Michael J. Harmon

Senior Assistant Solicitor
TRIAL COUNSEL FOR DEFENDANTS
214 City Hall
8th & Plum Streets
Cincinnati, Ohio 45202
(513) 352-3333/3334  Fax 352-1515
mike.harmon@Cincinnati-Oh.gov

9

## CERTIFICATE OF SERVICE

A copy of the foregoing Proposed Findings of Fact and Conclusions of Law have been served on Plaintiff's counsel, Timothy A. Smith, Esq., 199 East Court St., Suite 409, Cincinnati, OH 45202, by e-mail to timsmit@mac.com and by FAX to 421-1890, this 4th day of March, 2004.

/S/ Michael J. Harmon
Michael J. Harmon

10