LEXSEE 1997 OHIO APP. LEXIS 5784

**RICHARD L. SCHWELLER, Plaintiff-Appellant/Cross-Appellee, v. MARILYN Y. SCHWELLER, Defendant-Appellee/Cross-Appellant.**

**APPEAL Nos. C-970183, C-970191**

**COURT OF APPEALS OF OHIO, FIRST APPELLATE DISTRICT, HAMILTON COUNTY**

*1997 Ohio App. LEXIS 5784*

**December 26, 1997, Date of Judgment Entry on Appeal**

**NOTICE:** [*1] THESE ARE NOT OFFICIAL HEADNOTES OR SYLLABI AND ARE NEITHER APPROVED IN ADVANCE NOR ENDORSED BY THE COURT. PLEASE REVIEW THE CASE IN FULL.

**PRIOR HISTORY:** Civil Appeals From: Hamilton County Court of Common Pleas. TRIAL NO. A-9604927.

**DISPOSITION:** Judgment Appealed From Is: Reversed and Cause Remanded.

**LexisNexis(R) Headnotes**

**SYLLABUS:** The trial court erred in granting summary judgment on a malicious-prosecution claim and on assault and battery claims when questions of fact existed concerning the elements of all of the claims.

**COUNSEL:** Thomas S. Sapinsley, for Plaintiff-Appellant/Cross-Appellee.

Karen Mastruserio, for Defendant-Appellee/Cross-Appellant.

**JUDGES:** PAINTER, Presiding Judge. GORMAN, J., concurs. SUNDERMANN, J., dissents.

**OPINIONBY:** PAINTER

**OPINION:** *DECISION.*

PAINTER, Presiding Judge.

Two parties to a divorce have thus far involved four courts in their dispute. And it is far from over.

In July 1994, Richard Schweller, the plaintiff-appellant, and Marilyn Schweller, the defendant-appellee, instituted divorce proceedings in the Domestic Relations Division of the Hamilton County Court of Common Pleas--Round One. A Shared Parenting Plan was implemented for the care of their two children.

In [*2] July 1996, Richard was entitled to a scheduled vacation with the children. After the vacation, Richard allegedly failed to return their two minor children on time, and Marilyn became upset. Marilyn staged a personal protest against Richard (a "sit-in") in an attempt to force him to remain in the driveway. Initially, Marilyn tried to prevent Richard from entering the car. After Richard pushed her aside, Marilyn placed herself behind the car, sitting on the pavement. Despite Richard's pleas, Marilyn would not move. Richard grabbed Marilyn by the ankles and dragged her across the concrete driveway. His auto freed from the "sit-in," he left; thus ended Round Two.

Marilyn then filed a complaint against Richard for domestic violence. Richard was arrested in front of the children and hauled off to jail. The parties returned to court for Round Three--this time in the Hamilton County Municipal Court, Criminal Division. Following a bench trial, Judge David Davis acquitted Richard:

This is one of the saddest cases I've seen in municipal court. What's so sad about it is that people felt compelled to bring this little child down here to testify.

1997 Ohio App. LEXIS 5784, *

Prosecuting witness in this case has [*3] pointed out in closing argument that the defense started this whole thing, and the defense pointed out that she started the whole thing; that she was the aggressor, she precipitated, she prolonged it, and it is all her fault. We would not be here if it weren't for her.

And to bring this little boy down here, the only thing he could add after who knows how much coaching or influence is that "Daddy pushed Mommy down." That's all he had to add to this case. It's clear to me there's only one finding in this case, and I'm going to confine myself to my duties. Although I feel the need to do otherwise, I'm going to confine myself to my duties. Finding is not guilty.

Although the dispute could have ended at this point, Richard kept the fight alive by filing a malicious-prosecution claim against Marilyn in the Hamilton County Court of Common Pleas. Not to be outdone by her estranged husband, Marilyn filed counter-claims for assault and battery against Richard, thus setting the stage for Round Four. Both Marilyn and Richard moved for summary judgment.

In granting Marilyn's motion for summary judgment on the malicious-prosecution claim, the trial court ruled that the "lack of probable [*4] cause" element had not been met. The trial court stated that Judge Davis's denial of a Crim.R. 29 motion made by Richard at the end of the state's case meant that there was probable cause.

In granting Richard's motion for summary judgment on the assault and battery claims, the trial court again referred to the criminal case, noting that the state did not meet the requisite burden of proof to convict Richard; therefore, the trial court determined that, because Richard was acquitted in the criminal case, his motion for summary judgment on Marilyn's civil assault and battery claims should be granted.

We enter the fight to referee Round Five. In a sole assignment of error, Richard challenges the trial court's grant of Marilyn's motion for summary judgment and argues that the trial court improperly relied upon the denial of his Rule 29 motion in the criminal case as evidence in favor of probable cause. Richard's cross-appeal includes two assignments of error: one alleging that the trial court erred in granting Richard's motion for summary judgment because genuine issues of material fact exist, and one alleging that the trial court erred by relying on Richard's acquittal in the [*5] criminal domestic-violence case to grant his summary-judgment motion on Marilyn's intentional-tort claims. In simpler terms, both parties claim that the trial court erred in dismissing *their* claims, but was eminently correct in dismissing the other person's claim.

It seems to us that the parties are using the court system as their personal boxing arena, but we are not in the position to deny them their rights to resolve their dispute in this manner: "Absent circumstances that warrant sanctions for frivolous appeals under App.R. 23, we refuse to limit one's right to sue." n1 Although we would like to end this case and prevent it from entering yet another round of litigation in the court system, we must follow the law.

n1 *Leichtman v. WLW Jacor Communications, Inc. (1994), 92 Ohio App. 3d 232, 237, 634 N.E.2d 697, 700;* see, also, Section 16, Article I, Ohio Constitution.

Our review of a summary judgment is *de novo.* n2 Under Civ.R. 56(C), a motion for summary judgment is properly granted if the [*6] court, upon viewing the evidence in a light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. n3 We determine that genuine issues exist regarding several material facts and that reasonable minds cannot come to but one conclusion.

n2 *Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35, 506 N.E.2d 212; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App. 3d 579, 641 N.E.2d 265.*

n3 See *State ex rel. Howard v. Ferreri (1994), 70 Ohio St. 3d 587, 639 N.E.2d 1189; Temple v. Wean United, Inc. (1977), 50 Ohio St. 2d 317, 327, 364 N.E.2d 267, 274.*

I.    SUMMARY    JUDGMENT    ON    THE MALICIOUS-PROSECUTION CLAIM

Richard alleges that the trial court erred by granting Marilyn's motion for summary judgment on the malicious-prosecution [*7] claim because the trial court relied on the denial of his Rule 29 motion in the criminal case to demonstrate that probable cause existed.

In order to prevail on a cause of action for malicious criminal prosecution in Ohio, the plaintiff must allege

and prove three elements: (1) malice by defendant in instituting or continuing the prosecution against the plaintiff, (2) lack of probable cause, and (3) termination of the prosecution in plaintiff's favor. n4 Richard has satisfied the third element as a matter of law--Judge David Davis found him not guilty of domestic violence. And the record contains evidence about which reasonable minds could differ regarding the first and second elements.

n4 See *Robb v. Chagrin Lagoons Yacht Club, Inc. (1996), 75 Ohio St. 3d 264, 269-70, 662 N.E.2d 9, 13-14,* reconsideration denied (1996), *75 Ohio St. 3d 1452, 663 N.E.2d 333; Trussell v. Gen. Motors Corp. (1990), 53 Ohio St. 3d 142, 559 N.E.2d 732; Rogers v. Barbera (1960), 170 Ohio St. 241, 164 N.E.2d 162.*

The [*8] malice requirement turns directly on the defendant's state of mind. n5 For purposes of malicious prosecution, the term "malice" means "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." n6 In order to determine whether a criminal prosecution was instituted or continued for an improper purpose, the basis for the decision to prosecute must be investigated. Therefore, "malice may be inferred from the absence of probable cause," and thus, "the absence of probable cause is the gist of an action for malicious prosecution." n7

n5 *Criss v. Springfield Township (1990), 56 Ohio St. 3d 82, 564 N.E.2d 440.*

n6 *Id.* See, also, *Evans v. Smith (1994), 97 Ohio App. 3d 59, 646 N.E.2d 217.*

n7 *Melanowski v. Judy (1921), 102 Ohio St. 153, 131 N.E. 360,* paragraph one of the syllabus; *Evans, supra.*

Determining whether probable cause existed requires inquiry into the facts and the circumstances actually known to or reasonably within the contemplation [*9] of the defendant at the time of the instigation of the criminal proceedings. n8 With regard to a malicious-prosecution claim, the defendant undertakes a criminal prosecution without probable cause if she institutes or continues the prosecution without "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." n9

n8 See *Evans, 97 Ohio App. 3d at 68, 646 N.E.2d at 223,* quoting *McFinley v. Bethesda Oak Hosp. (1992), 79 Ohio App. 3d 613, 616-17, 607 N.E.2d 936, 939.*

n9 *Ash v. Marlow (1851), 20 Ohio 119,* paragraph one of the syllabus; see, also, *Rogers v. Barbera, 170 Ohio St. at 246, 164 N.E.2d at 166; Evans v. Smith, 97 Ohio App. 3d at 68, 646 N.E.2d at 223.*

The trial court, by relying on the fact that Richard's Crim.R. 29 motion was denied in his criminal trial, concluded that Marilyn had shown probable cause for filing the domestic-violence [*10] charge as a matter of law. The trial court may determine the issue of probable cause, which is normally a question of fact to be resolved at trial, as a matter of law on a record that allows for only one reasonable conclusion. n10 But when the resolution of the issue of probable cause, and by inference the issue of malice, depends on whether the trier of fact believes the plaintiff or the defendant, summary disposition of a malicious-prosecution claim is inappropriate. n11 The fact that a trial court overruled a Crim.R. 29 motion is not in and of itself determinative of the issue of probable cause in a malicious-prosecution action, even though a finding of guilty, even on a lesser charge, negates the "lack of probable cause" finding. n12

n10 *McFinley, supra.*

n11 See *Trussell, 53 Ohio St. 3d at 144, 559 N.E.2d at 734;* see, also, *Evans, 97 Ohio App. 3d at 69; 646 N.E.2d at 223.*

n12 See *Marki v. Marsh Supermarket (Dec. 31, 1996), 1996 Ohio App. LEXIS 5894,* Hamilton App. No. C-960290, unreported.

In this case, the [*11] trier of fact must determine whether the circumstances surrounding the "sit-in" would warrant a cautious person to believe that Richard was guilty of domestic violence. The evidence presented requires the trier of fact to determine which circumstances are true and whether to believe Marilyn or Richard. Therefore, we conclude that the trial court erred in granting Marilyn's summary-judgment motion.

Richard's assignment of error is sustained.

## II. SUMMARY JUDGMENT ON THE ASSAULT AND BATTERY CLAIMS

In her first assignment of error, Marilyn alleges that the trial court erred in granting Richard's motion for

summary judgment on her counterclaims because genuine issues of material fact exist. We agree.

We conclude that genuine issues of material fact exist about whether Richard intended harm. The tort of assault is defined as:

The willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the [*12] actor knew with substantial certainty that his act would bring about harmful or offensive contact. n13

n13 *Smith v. John Deere Co. (1993), 83 Ohio App. 3d 398, 406, 614 N.E.2d 1148, 1154.*

It is not clear whether Richard knew with substantial certainty that the actions he took in order to leave Marilyn's driveway would bring about harmful or offensive contact. Also, whether Marilyn was placed in fear of such contact and whether it was reasonable for her to fear such contact are questions that should be answered by the trier of fact and that should not be decided by summary judgment.

A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact and when a harmful contact results. n14 Contact that is offensive to a reasonable sense of personal dignity is offensive contact. n15 "No matter how trivial the incident, a battery is actionable, even if damages are only one dollar." n16 "In civilized society men must be able to assume that others will do them no [*13] intentional injury--that others will commit no intentioned aggressions upon them." n17 Whether Richard intended offensive contact, whether his actions were offensive to Marilyn's reasonable sense of personal dignity, and whether his actions were privileged because she was blocking his retreat are questions of fact to be determined by the trier of fact.

n14 See *Love v. Port Clinton (1988), 37 Ohio St. 3d 98, 99, 524 N.E.2d 166, 167.*

n15 *Id.*

n16 *Leichtman, 92 Ohio App. 3d at 235, 634 N.E.2d at 699,* citing *Lacey v. Laird (1956), 166 Ohio St. 12, 139 N.E.2d 25,* paragraph two of the syllabus.

n17 *Id.,* quoting Pound, An Introduction to the Philosophy of Law (1922) 169.

Marilyn's first assignment of error is sustained.

In her second assignment of error, Marilyn alleges that the trial court erred by relying on Richard's acquittal in the criminal domestic-violence case to grant his summary-judgment motion on her intentional-tort claims.

The trial court relied upon the rulings [*14] of the criminal court in order to justify summary judgment on both civil intentional torts. Not only are the elements of the offense different from the elements of the torts, the standards used to judge civil liability and criminal guilt are also different. Therefore, the trial court erred in granting Richard's motion for summary judgment.

Marilyn's second assignment of error is sustained.

For these reasons, we reverse both summary-judgment rulings and reluctantly remand the case for further proceedings--Round Six--secure in the belief that we will see this dispute, in some as yet unknowable form, again.

*Judgment reversed and cause remanded.*

GORMAN, J., concurs.

SUNDERMANN, J., dissents.

**DISSENTBY:** SUNDERMANN

**DISSENT:** SUNDERMANN, Judge, dissenting.

The majority correctly sees that this case is just another round in a continuing battle in a divorce, but acts as an enabler for even more senseless litigation between two angry and juvenile parties. This case started in domestic relations court, and as a result of a "shared parenting" order, the child had to be shuttled back and forth between the parents. An incident occurred that is detailed in the majority opinion; [*15] it is this incident that began more rounds of litigation.

First, a criminal charge was filed by the wife against the husband. Judge Davis correctly entered a finding of not guilty and could not help calling this "one of the saddest cases I've seen." He properly saw this as another battle in the domestic war and dismissed the case. Next, the husband filed a malicious-prosecution claim against his wife, and she shortly followed with an assault and battery claim. The trial judge, correctly reading the situation, dismissed both claims. Rather than move on,

1997 Ohio App. LEXIS 5784, *

both parties brought an appeal to this court. This case cries out to be concluded, especially for the benefit of the innocent child who is dragged in as a witness against either his mother or his father in every proceeding. But rather than end at least this part of this sad matter, the majority is sending this case back for more rounds of litigation, knowing that whatever the outcome, more appeals will follow. I would urge we follow the sound assessment and reasoning of the trial judge and bring this case to an end. I would affirm.